**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION**

DOZIER LAW FIRM LLC, on behalf of itself and all others similarly situated,

Plaintiff,

*vs.*

GRAY TELEVISION, INC.; HEARST COMMUNICATIONS; NEXSTAR MEDIA GROUP, INC.; TEGNA INC.; TRIBUNE MEDIA COMPANY; and SINCLAIR BROADCAST GROUP, INC.,

Defendants.

Civil Case No.: 1:18-cv-05392
Honorable Virginia M. Kendall

**DEFENDANT "HEARST COMMUNICATIONS" ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S ANTITRUST CLASS ACTION COMPLAINT**

Defendant Hearst Television Inc.[1] ("Hearst"), erroneously sued as "Hearst Communications" in this action, by and through its undersigned attorneys, hereby answers the Class Action Complaint, dated August 8, 2018, ECF No. 1 (the "Complaint") as follows: Except as expressly admitted below, Hearst denies each and every allegation in the Complaint. Moreover, Hearst denies any and all allegations contained in headings or in unnumbered paragraphs of the Complaint. The paragraphs of this Answer correspond to the numerical paragraphs of the Complaint, except for the defenses at the end.

**INTRODUCTION**

1.      This antitrust action concerns the illegal and anticompetitive practices of Defendants Gray Television, Inc., Hearst Communications, Nexstar Media Group, Inc., Tegna Inc., Tribune Media Company, and Sinclair Broadcast Group, Inc. (collectively, "Defendants"), who engaged in unlawful collusion and conspired to artificially inflate

---

[1] "Hearst Communications," the entity sued by Plaintiff in this action, is a nonexistent legal entity; Hearst assumes Plaintiff intended to sue "Hearst Television Inc." or an unidentified subsidiary entity with which it transacted. Hearst Television Inc. files this responsive pleading in place of "Hearst Communications", but makes no representation that Plaintiff has any cause of action against Hearst Television Inc.

the price of purchasing local television advertisements in violation of Section 1of the Sherman Act, 15 U.S.C. § 1.

      **Answer:** Hearst denies the allegations in Paragraph 1 of the Complaint, except to the extent the allegations state legal conclusions that do not require a response.

2.      Plaintiff seeks to represent a Class of all persons and entities in the United States who paid for all or a portion of advertisement time on local TV provided by Defendants from at least January 1, 2014, until the effects of their unlawful conduct cease (the "Class Period").

      **Answer**: Hearst admits that Plaintiff purports to bring this case as a Class action, but otherwise avers that Paragraph 2 of the Complaint states legal conclusions that do not require a response.

3.      Since at least January 1, 2014, Defendants unlawfully coordinated their efforts to artificially inflate prices for television commercials. Rather than lawfully vying for advertisers through price competition, Defendants and their co-conspirators instead conspired to fix prices by sharing proprietary information, thereby reducing competition in the market.

      **Answer**: Hearst denies the allegations in Paragraph 3 of the Complaint, except to the extent the allegations state legal conclusions that do not require a response.

4.      On July 26, 2018, *The Wall Street Journal* and other media outlets reported that Sinclair Broadcast Group Inc., Tribune Media Co., and certain independent local television stations are the subjects of an ongoing United States Department of Justice ("DOJ") investigation regarding whether communication between the stations' ad sales teams led to higher rates for TV commercials.

      **Answer**: Hearst admits that an article appeared in the *Wall Street Journal* on or about July 26, 2018 purporting to describe an investigation by the United States Department of Justice, and refers to that article for its contents.

## JURISDICTION AND VENUE

5.      This action arises under Section 1 of the Sherman Act, 15 U.S.C. § 1 and

Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26.

**Answer**:  The allegations contained in Paragraph 5 of the Complaint state legal conclusions to which no response is required.    To the extent a response is required, Hearst denies the allegations in this Paragraph, including denying that the Complaint describes activity giving rise to an action under the Sherman Act or the Clayton Act.

6.    This Court has jurisdiction over the federal Sherman Act claim pursuant to 28 U.S.C. §§ 1331 and 1337 and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26.

**Answer**:    The allegations contained in Paragraph 6 of the Complaint state legal conclusions to which no response is required.    To the extent a response is required, Hearst denies the allegations in this Paragraph, including denying that any claim is properly asserted, or that Plaintiff has suffered any injury or has standing to assert any claim.

7.    Plaintiff seeks to recover damages suffered by the Class and the costs of suit, including reasonable attorneys' fees; to enjoin Defendants' anticompetitive conduct; and for such other relief as is afforded under the antitrust laws of the United States.

**Answer**:  The allegations contained in Paragraph 7 of the Complaint state legal conclusions to which no response is required.    To the extent a response is required, Hearst admits that Plaintiff seeks the relief described, but denies the remaining allegations in this Paragraph, including denying that the Complaint describes activity giving rise to any claim, that Plaintiff can maintain its case on behalf of any class, and that Plaintiff is entitled to any relief.

8.    This Court has personal jurisdiction over Defendants subject to the nationwide service provisions of Section 12 of the Clayton Act, 15 U.S.C. § 22. Furthermore, Defendants have engaged in the unlawful acts described in this Complaint with the foreseeable or intended effect of causing substantial economic harm to purchasers of television advertisements in the state of Illinois.

**Answer**:  The allegations contained in Paragraph 8 of the Complaint state legal conclusions to which no response is required.  To the extent a response is required, Hearst denies the allegations in Paragraph 8 of the Complaint.

9.    Venue is proper in this District pursuant to Sections 4, 12, and 16 of the Clayton Act, 28 U.S.C. §§ 15, 22, and 26, and pursuant to 28 U.S.C. § 1391(b), (c), and (d). Defendants are registered to do business, transacted business, were found, and have agents in this District.

**Answer**:   The allegations contained in Paragraph 9 of the Complaint state legal conclusions to which no response is required.

10.    Defendants' activities were within the flow of, were intended to, and did have a substantial effect on the interstate commerce of the United States.

**Answer**:  The allegations contained in Paragraph 10 of the Complaint state legal conclusions to which no response is required.  Hearst further avers that the use of the phrase "defendants' activities" in Paragraph 10 of the Complaint renders the allegation vague, ambiguous and incapable of response.  To the extent a response is required, Hearst lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 10 of the Complaint.

## PARTIES

### Plaintiffs

11.    Plaintiff Dozier Law Firm LLC is a law firm located in Macon, Georgia. During the Class Period, Plaintiff purchased advertisement time directly from one or more of the Defendants or their co-conspirators and has suffered monetary loss as a result of the antitrust violations alleged herein.

**Answer**: Hearst lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in the first sentence of paragraph 11 of the Complaint.

Hearst denies that Plaintiff purchased advertisement time directly from it, admits that Plaintiff purchased advertisement time directly from a subsidiary of Hearst, and lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 11 of the Complaint, except to the extent the allegations state legal conclusions that do not require a response.

### Defendants

12. Defendant Gray Television, Inc. ("Gray") is a television broadcast company headquartered at 4370 Peachtree Road, NE, Suite 400, Atlanta, Georgia 30319. Gray owns and operates television stations and digital assets in the United States. As of February 23, 2018, Gray owned and operated television stations in 57 television markets, broadcasting approximately 200 program streams, including approximately 100 channels affiliated with the CBS Network, the NBC Network, the ABC Network, and the FOX Network. On June 23, 2018, Gray entered into a merger agreement with, among others, Raycom Media, Inc. Giving effect to the merger and prior to divestitures of stations due to market overlaps, Gray expects to own and/or operate 142 full-power television stations serving 92 markets. Upon completion, Gray expects to reach approximately 24 percent of U.S. television households through nearly 400 separate program streams including approximately 165 affiliates of the ABC/NBC/CBS/FOX networks, and over 100 affiliates of the CW, MyNetwork, and MeTV networks.

**Answer**: Hearst lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 12 of the Complaint.

13. Defendant Hearst Corporation ("Hearst"), headquartered at 300 West 57th Street, New York, New York 10019, is a diversified media and information Company. Hearst operates television stations and cable networks throughout the United States.

**Answer**: Hearst avers that Hearst Corporation is not a named defendant in this action, admits that Hearst Corporation is headquartered at 300 West 57th Street, New York, New York 10019 and is a diversified media and information company, but otherwise denies the

allegations contained in Paragraph 13 of the Complaint. Hearst avers that subsidiaries of Hearst

Television Inc. operate local television stations throughout the United States.

14.     Defendant Nexstar Media Group ("Nexstar"), headquartered at 545 East John Carpenter Freeway, Suite 700, Irving, Texas 75062, operates as a television broadcasting and digital media company in the United States. As of December 31, 2017, the company owned, operated, programmed, or provided sales and other services to 170 television stations in 100 markets.

**Answer**: Hearst lacks knowledge and information sufficient to form a belief as to

the truth of the allegations contained in Paragraph 14 of the Complaint.

15.     Defendant Tegna, Inc. ("Tegna") is a broadcasting, digital media, and marketing services company headquartered at 7950 Jones Branch Drive, McLean, Virginia 22107. Tegna owns and operates 47 television stations in 39 markets across the United States.

**Answer**: Hearst lacks knowledge and information sufficient to form a belief as to

the truth of the allegations contained in Paragraph 15 of the Complaint.

16.     Defendant Tribune Media Company ("Tribune"), headquartered at 515 North State Street, Chicago, Illinois 60654, operates through its subsidiaries as a media and entertainment company in the United States. It offers news, entertainment, and sports programming through Tribune Broadcasting local television stations, including FOX television affiliates, CW Network television affiliates, CBS television affiliates, ABC television affiliates, MY television affiliates, NBC television affiliates, and independent television stations; and television series and movies on WGN America, a national general entertainment cable network. Tribune owns 43 broadcast television stations in approximately 35 cities.

**Answer**: Hearst lacks knowledge and information sufficient to form a belief as to

the truth of the allegations contained in Paragraph 16 of the Complaint.

17.     Defendant Sinclair Broadcast Group., Inc. ("Sinclair"), headquartered at 10706 Beaver Dam Road, Hunt Valley, Maryland 21030, operates as a television broadcast company in the United States. As of December 31, 2017, it owned, operated, and/or provided services to 191 stations in 89 markets, which broadcast 601 channels.

**Answer**: Hearst lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 17 of the Complaint.

## AGENTS AND CO-CONSPIRATORS

18. The acts alleged against the Defendants in this Complaint were authorized, ordered, or done by their officers, agents, employees, or representatives, while actively engaged in the management and operation of Defendants' businesses or affairs.

**Answer**: The allegations contained in Paragraph 18 of the Complaint state legal conclusions that do not require a response. To the extent any response is required, Hearst denies the allegations in Paragraph 18 of the Complaint.

19. Various persons and/or firms not named as Defendants herein may have participated as co-conspirators in the violations alleged herein and may have performed acts and made statements in furtherance thereof.

**Answer**: The allegations contained in Paragraph 19 of the Complaint state legal conclusions that do not require a response. To the extent any response is required, Hearst denies the allegations in Paragraph 19 of the Complaint.

20. Each Defendant acted as the principal, agent, or joint venture of, or for, other Defendants with respect to the acts, violations, and common course of conduct alleged by Plaintiff.

**Answer**: The allegations contained in Paragraph 20 of the Complaint state legal conclusions that do not require a response. To the extent any response is required, Hearst denies the allegations in Paragraph 20 of the Complaint.

## FACTUAL ALLEGATIONS

### A.    The Department of Justice Investigates Defendants

21. On July 26, 2018, *The Wall Street Journal* reported that the Department of Justice is investigating Defendants Sinclair and Tribune, among other local television station

owners, to determine if these station owners engaged in unlawful behavior to artificially raise prices for television commercials. Defendants Hearst, Nexstar, and Tegna are also involved in the DOJ probe according to reports. Specifically, the DOJ's investigation targets whether there were "coordinated efforts when [the local television stations'] ad sales teams communicated with each other about their performance, potentially leading to higher rates for TV commercials."

      **Answer**: Hearst admits that an article appeared in the *Wall Street Journal* on or about July 26, 2018 purporting to describe an investigation by the United States Department of Justice, and refers to that article for its contents. Hearst lacks knowledge or information sufficient to form a belief as to the contents of the other "reports" referenced in Paragraph 21 of the Complaint and refers to any such reports for their contents. To the extent the allegations in Paragraph 21 purport to describe the contents of the source contained in footnote 3, Hearst refers to that source for its contents. To the extent the last sentence of Paragraph 21 of the Complaint purports to quote the July 26, 2018 *Wall Street Journal* article, Hearst refers to that article for its contents.

      22.    This DOJ investigation grew out of the Justice Department Antitrust Division's earlier examination of Sinclair's proposed $3.9 billion acquisition of Tribune. Despite earlier speculation that the approval was imminent, the Justice Department never approved the merger. In fact, in early July 2018, Federal Communications Chairman Ajit Pai indicated there were "serious concerns" regarding the merger, and issued an order for a hearing on the deal in front of an administrative judge—signaling to many insiders that the proposed merger is dead.

      **Answer**: To the extent the first sentence of Paragraph 22 purports to describe the contents of the July 26, 2018 *Wall Street Journal* article, Hearst refers to that article for its contents. Hearst admits that at the time of the filing of the Complaint, the Department of Justice had not announced any approval of a merger between Sinclair and Tribune, admits that in July 2018 the FCC Chairman issued a statement stating that he had "serious concerns about the Sinclair/Tribune transaction" and prepared a draft order for an administrative hearing on the

merger, and otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 22 of the Complaint.

### B.    The Local Television Advertising Market

23.    In the United States, "local television" is comprised of larger parent companies who own multiple local TV stations. The individual stations carry programming distributed through their broadcast platform, which can be programming provided by national broadcast networks, local news programs, or any variety of other programming.

**Answer**:  Hearst admits that in the United States, local television stations can carry programming provided by national broadcast networks, local programs, or other programming, and that programming is distributed through broadcast platform, and otherwise denies the allegations in Paragraph 23 of the Complaint.

24.    In 2004, the five largest companies in the local TV market—Sinclair, Nexstar, Gray, Tegna, and Tribune—collectively owned, operated, or serviced 179 full-power stations. In 2014 this number grew to 378, and in 2016 these five companies controlled 443 stations.



**Answer**: Hearst admits the articles cited in Paragraph 24 contain the quoted figures, and refers to those articles for their contents. Hearst otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 24 of the Complaint.

25. Broadcasting companies, such as Defendants, rely on the sale of commercial time on their stations as a vital source of revenue. Local TV station owners attempt to meet the needs of advertisers by delivering to significant audiences in key demographics.

**Answer**: Hearst admits that the sale of commercial advertising time on Hearst television stations provides revenue to those stations and admits that Hearst television stations attempt to meet the various needs of their respective advertisers but otherwise denies the allegations in Paragraph 25 of the Complaint.

26. The actual amount of revenue achieved from local TV advertising varies substantially depending a number of variables. One factor that significantly affects revenue is the station's ability to attract and retain local, national, and network advertisers.

**Answer**: Hearst admits the allegations contained in the first sentence of Paragraph 26 of the Complaint, and admits that attracting and retaining advertisers is one such factor, and otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 26 of the Complaint.

27. The television industry continues to struggle as it adapts to a rapidly changing market of consumers whose media preferences have drifted away from traditional sources and moved toward digital channels. Local TV has been grappling with ratings erosion and "cord-cutting" viewers cancelling their television subscriptions. This continually-shifting landscape has added significant pressure on profit margins.

**Answer**: To the extent the allegations contained in Paragraph 27 of the Complaint purport to describe the contents of the source contained in footnote 9, Hearst refers

to that source for its contents.  To the extent a response is otherwise required, Hearst lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 27 of the Complaint.

28.    In recent years, television broadcasting companies have experienced a significant slowing of growth in advertising revenues. But even with this decrease in television advertising spending, total revenue in the U.S. local television industry are expected to reach $27.7 billion in 2018, up from $26.2 billion in 2017.

[CHART OMITTED—SEE COMPLAINT]

**Answer**:  To the extent the allegations contained in Paragraph 28 of the Complaint purport to describe the contents of the source contained in footnote 10 and the referenced chart, Hearst refers to those sources for their contents.  To the extent a response is otherwise required, Hearst lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 28 of the Complaint.

29.    Given the stalled growth in spending on television advertising, Defendants responded to these lackluster advertisement sales through unlawfully colluding on pricing, thereby forcing Plaintiff and members of the Class to pay artificially high prices for advertising on local television.

**Answer**:  Hearst denies the allegations contained in Paragraph 29 of the Complaint, except to the extent the allegations state legal conclusions that do not require a response.

**1.    The Structure and Characteristics of The Market For Local Television Advertising Supports The Existence of a Conspiracy**

30.    The structure and other characteristics of the market for local television advertising make it conducive to anticompetitive conduct among Defendants and make collusion particularly attractive. Specifically, the local television advertising market (1) is in

an industry that has been rapidly consolidating and is becoming increasingly concentrated; (2) has high barriers to entry; and (3) is comprised of participants who had motives and ample opportunities to conspire.

**Answer**: To the extent the allegations contained in Paragraph 30 of the Complaint purport to describe the contents of the source contained in footnote 10, Hearst refers to that source for its contents. To the extent a response is required, Hearst denies the allegations contained in Paragraph 30 of the Complaint, except to the extent the allegations state legal conclusions that do not require a response.

### a.   Rapid Consolidation of the Local TV Market

31.   The more highly-concentrated a market is, the more susceptible it is to collusion. The local tv market has undergone a period of rapid concentration in recent years, in response to advertisers' decreased spending.

**Answer**: To the extent the allegations contained in Paragraph 31 of the Complaint purport to describe the contents of the source contained in footnote 11, Hearst refers to that source for its contents. To the extent a response is required, Hearst denies the first sentence of Paragraph 31 of the Complaint, and lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence Paragraph 31 of the Complaint, except to the extent the allegations state legal conclusions that do not require a response.

32.   The year 2013 marked a massive change in local television, when "big owners of local TV stations got substantially bigger, thanks to a wave of station purchases."

**Answer**: To the extent the allegations contained in Paragraph 32 of the Complaint purport to describe the contents of the source contained in footnote 12, Hearst

refers to that source for its contents. To the extent a response is required, Hearst denies the allegations contained in Paragraph 32 of the Complaint.

33. Owners of stations have not shied away regarding their intent to push consolidation as far as possible. In early 2018, local television station owner E.W. Scripps Co., indicated that its "priority is in-market consolidation to create duopolies."

        **Answer**: To the extent the allegations contained in Paragraph 33 of the Complaint purport to describe the contents of the source contained in footnote 13, Hearst refers to that source for its contents. Hearst admits that the source in footnote 13 contains the quoted language, but otherwise denies the allegations contained in Paragraph 33 of the Complaint.

34. Additional proposed mergers, if completed, will further concentrate the market. On June 25, 2018, Defendant Gray agreed to buy fellow television station owner Raycom Media Inc. in a $3.65 billion deal that would create a company that doubles Gray's reach to nearly a quarter of U.S. TV households.

        **Answer**: To the extent the allegations contained in Paragraph 34 of the Complaint purport to describe the contents of the source contained in footnote 14, Hearst refers to that source for its contents. Hearst admits that the source in footnote 14 contains the cited figures. Hearst otherwise lacks knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 34 of the Complaint.

       **b.**    **Barriers to Entry in the Local Television Market**

35. If parties engage in an arrangement that elevates the prices of a product above competitive levels, this should in typical circumstances attract new competitors to enter the market, seeking to fill the price gap and benefit from supracompetitive pricing. However, when barriers to entry are high, new entrants are far less likely to enter the market. Barriers to entry help in the formation and maintenance of cartels and market-allocation agreements, as has happened in the local television market.

**Answer**: The allegations contained in Paragraph 35 of the Complaint state legal or other conclusions to which no response is required. To the extent a response is required, Hearst denies the allegations in Paragraph 35 of the Complaint.

36. Although certain specific barriers to market entry have been lowered through the expansion and advancement of technology, new entrants to the broadcasting markets face six critical barriers, including: governmental policy; the presence of dominant broadcasters; access to content; audience behavior; consumer costs; and capital requirements.

**Answer**: The allegations contained in Paragraph 36 of the Complaint state legal or other conclusions to which no response is required. To the extent the allegations contained in Paragraph 36 of the Complaint purport to describe the contents of the source contained in footnote 15, Hearst refers to that source for its contents. To the extent a response is otherwise required, Hearst lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 36 of the Complaint.

37. Regulatory and/or administrative practices by the government when issuing broadcasting licenses may restrict market access and distort competition.

**Answer**: The allegations contained in Paragraph 37 of the Complaint appear to state legal or other conclusions to which no response is required. To the extent a response is required, Hearst lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 37 of the Complaint.

38. The existing power structure of dominant broadcasters also proves to be a barrier to entry. These dominant broadcasters have long-established relationships with their viewers—and most likely also hold sway with advertisers. Any potential entrants in the market would have to offer more compelling deals than the existing broadcasters in order to gain market share.

**Answer**: The allegations contained in Paragraph 38 of the Complaint appear to state legal or other conclusions to which no response is required. To the extent a response is required, Hearst denies the allegations in Paragraph 38 of the Complaint.

39. Larger companies are also better able to negotiate programming deals with networks or syndicators, whereas a newer entrant to the market would be required to invest significant capital and time in establishing itself before it could work with networks.

**Answer**: The allegations contained in Paragraph 39 of the Complaint appear to state legal or other conclusions to which no response is required. To the extent a response is required, Hearst lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 39 of the Complaint.

40. Reasonably-priced access to desired programming is yet another barrier. Content acquisition, which is critical to pull in viewers, constitutes a significant cost to new market competitors.

**Answer**: The allegations contained in Paragraph 40 of the Complaint appear to state legal or other conclusions to which no response is required. To the extent a response is required, Hearst lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 40 of the Complaint .

41. Commercial broadcasters' operations are primarily financed through advertising fees, so it is by necessity that they locate and retain an audience base that will also attract a sufficient number of advertisers. Therefore, these new broadcasters in the market would face the difficult task of providing programming compelling enough to convince viewers to change their viewing and channel habits.

**Answer**: Hearst admits that one source of a broadcaster's revenue can be advertising fees. Hearst lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 41 of the Complaint.

42.     The cost and inconvenience encountered by customers who try switching between different television broadcasters has the potential to discourage them from altering their established patterns of viewing. As one example, a consumer switching cable providers might face costs of replacing the set-top boxes or might have to trade in and upgrade equipment.

**Answer**: Hearst lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 42 of the Complaint.

43.     Finally, it would require considerable capital to break into the local television market. The total expense, time, and technical sophistication for a potential competitor to access the economies of scale and the audience base already obtained by Defendants would be immense. To the extent these costs are prohibitively high, they constitute a serious entry barrier.

**Answer**: The allegations contained in Paragraph 43 of the Complaint appear to state legal or other conclusions to which no response is required. To the extent a response is required, Hearst lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 43 of the Complaint.

**c.     Defendants Had Motives and Opportunities to Conspire with Each Other**

44.     In 2017, television advertising sales in the U.S. saw the steepest drop outside of a recession in at least 20 years, while the sales at cable networks dropped for the first time in almost a decade. Industry specialists do not predict any rebound or pickup in 2018, excluding huge, cyclical events like the Olympics and the midterm elections.

**Answer**: To the extent the allegations contained in Paragraph 44 of the Complaint purport to describe the contents of the source contained in footnote 16, Hearst refers to that source for its contents. To the extent a response is otherwise required, Hearst lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 44 of the Complaint.

45.     The online video advertising market is gaining momentum as the decline in

television viewership dips even further down. Virtually all new advertising money entering the marketplace goes toward online advertising, and nearly half of the growth in local video ad spending during the next five years will go to digital platforms. "Television ad sales have fallen even as global advertising grows, leading research firms and analysts to predict that the business may never recover."

        **Answer**: To the extent the allegations contained in Paragraph 45 of the Complaint purport to describe the contents of the source contained in footnote 17, Hearst refers to that source for its contents. To the extent a response is otherwise required, Hearst lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 45 of the Complaint.

    46.   Sinclair's financial statements reveal the same story. According to Sinclair's most recent 10-K, one primary source of revenue for local television stations is selling commercial inventory on its television stations to advertising customers. Sinclair also admits to the volatility of such a system, pointing to the uncertainty of revenue potentially affecting operating results and its ability to repay its indebtedness.

        **Answer**: To the extent the allegations contained in Paragraph 46 of the Complaint purport to describe the contents of the sources contained in footnotes 18 and 19, Hearst refers to those sources and all of Sinclair's public filings for their contents. To the extent a response is otherwise required, Hearst lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 46 of the Complaint.

    47.   Given that Defendants' business model depends to a large extent on the revenue from local television advertising to sustain daily operations, in the face of declining sales, Defendants had good reason and sufficient motivation to conspire to artificially raise the prices of local TV advertisements.

        **Answer**: The allegations contained in Paragraph 47 of the Complaint appear to state a legal conclusion to which no response is required. To the extent a response is required, Hearst denies the allegations in Paragraph 47 of the Complaint.

48.     There were abundant opportunities for Defendants to meet and conspire with each other under the guise of legitimate business contacts and to perform acts necessary for the operation and furtherance of the conspiracy.

**Answer**: The allegations contained in Paragraph 48 of the Complaint appear to state a legal conclusion to which no response is required. To the extent a response is required, Hearst denies the allegations in Paragraph 48 of the Complaint.

49.     For example, in 2013, when nearly 300 full-power local TV stations were changing hands, many deals resulted in stations in the same market being jointly operated in practice, but separately owned on paper, a practice that has seen explosive growth in recent years. As of 2014, joint service agreements existed between Defendants and other local TV station owners in a minimum of 94 markets—almost half of the 210 local television markets nationwide—up from merely 55 in 2011.

**Answer**: To the extent the allegations contained in Paragraph 49 of the Complaint purport to describe the contents of the source contained in footnote 20-21, Hearst refers to that source and all of Sinclair's public filings for their contents. To the extent a response is otherwise required, Hearst lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 49 of the Complaint.

50.     Sinclair has admitted that some of its stations "entered into agreements with other stations in the same market, through which [it] provide[s] programming and operating services[,] . . . sales services[,] and other non-programming operating services."

**Answer**: To the extent the allegations contained in Paragraph 50 of the Complaint purport to describe the contents of the source contained in footnote 22, Hearst refers to that source and all of Sinclair's public filings for their contents. To the extent a response is otherwise required, Hearst lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 50 of the Complaint.

51.     Industry associations such as the Television Bureau of Advertising, Inc. ("TVB"),

the National Association of Broadcasters ("NAB"), and the Media Rating Council ("MRC"), all gave Defendants additional ample opportunity to engage in unlawful collusion, through conferences and meetings held by those associations, as well as part of merger negotiations.

**Answer**: The allegations contained in Paragraph 51 of the Complaint appear to state a legal conclusion to which no response is required. To the extent a response is required, Hearst denies the allegations in Paragraph 51 of the Complaint.

52. The industry trade association TVB—which includes Defendants Hearst, Nexstar, Sinclair, Tegna, and Tribune—is a "not-for-profit trade association representing America's $21 billion local broadcast television industry." TVB encourages information sharing among employees of broadcast television companies, including Defendants, especially advertising sales representatives. Nexstar's President and CEO serves as the Chairman of TVB.

**Answer**: Hearst admits that the Television Bureau of Advertising ("TVB") describes itself as a "not-for-profit trade association representing America's $21 billion local broadcast television industry" and that the President and CEO of Nexstar Broadcasting Group was elected to a two-year term as the Chairman of the Board of TVB in 2017. To the extent the second sentence of Paragraph 52 of the Complaint purports to describe the contents of the source referenced in footnote 23 of the Complaint, Hearst refers to that source for its contents. Hearst otherwise denies the allegations contained in Paragraph 52 of the Complaint.

53. On November 20, 2017, Defendants Hearst, Nexstar, Sinclair, Tegna, and Tribune announced the creation of the TV Interface Practices or "TIP" Initiative—"an industry work group dedicated to developing standard-based interfaces to accelerate electronic advertising transactions for local TV broadcasters and their media agency partners." On the heels of this announcement, three Defendant-executives made the following, similar public statements: Nexstar's President and CEO stated that the industry "must work together as an industry"; Sinclair's President and CEO, Chris Ripley, stated "[t]he TIP Initiative demonstrates the industry's shared commitment to working together" to grow their advertising sales; and Tribune's President and CEO, Larry Wert, indicated that, through the TIP Initiative, Defendants could "actively work[] together."

**Answer**:  To the extent that Paragraph 53 of the Complaint purports to describe the contents of the sources referenced in footnote 24-27 of the Complaint, Hearst refers to those sources for their contents.  Hearst admits on November 20,  2017, the creation of the TV Interface Practices or "TIP" Initiative was announced and that consortium members included Hearst, Nexstar, Sinclair, Tegna, and Tribune, but otherwise denies the allegations contained in first sentence of Paragraph 53 of the Complaint.  Hearst admits that the statements in quotation marks in the second sentence of Paragraph 53 of the Complaint were made by the referenced individuals, but Hearst otherwise lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in the second sentence of Paragraph 53 of the Complaint.

54.    Sinclair, Tribune, and other broadcast television companies are also members of the NAB, the self-described "premier trade association for broadcasters."  Tegna's President and CEO, David Lougee, and Hearst's President, Jordan Wertlieb, both serve on NAB's Executive Committee.  Gray TV's Chairman, President, and CEO, Hilton Howell, Nexstar's Chairman, President and CEO, Perry Sook, Sinclair's President and CEO, Chris Ripley, and Tribune's COO, Kathy Clements, all serve on the NAB Television Board of Directors.  NAB hosts numerous meetings and other events for industry members throughout the year, which are attended by Defendants' executives.

**Answer**:  Hearst denies that Jordan Wertlieb is President of "Hearst Communications", avers that Wertlieb is President of Hearst Television Inc. and admits that he serves on NAB's Executive Committee and has attended NAB meetings, but otherwise lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 54 of the Complaint, and refers to the sources cited in footnotes 28-30 for their contents.

55.    Gray TV, Hearst, Nexstar, Sinclair, Tegna, Tribune, and several other local television station owners are also members of MRC, which boasts that one of the "[b]enefits of

MRC [m]embership" is that "[m]embers are exposed to other members' ideas and thoughts" and that "[m]embers can attend formal education seminars" together.

**Answer**: Hearst admits that it is a member of the Media Rating Council ("MRC") but otherwise lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 55 of the Complaint, and refers to the sources cited in footnotes 31-32 for their contents.

## CLASS ACTION ALLEGATIONS

56.     Plaintiff brings this action on behalf of itself and as a class action under Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the following class (the "Class"):

All persons and entities in the United States who paid for all or a portion of the cost of advertisement time directly to Defendants, or any current or former subsidiary or affiliate of Defendants, or any co-conspirator, during the period from at least and including January 1, 2014 until the effects of Defendants' unlawful conduct ceases. Excluded from the Class are Defendants, their parent companies, subsidiaries, affiliates, agents, co-conspirators, federal governmental entities and instrumentalities of the federal government, and states and their subdivisions, agencies and instrumentalities.

**Answer**: Hearst admits Plaintiff purports to bring this lawsuit as a class actions on behalf of the class described in Paragraph 56 of the Complaint, but denies that this action meets class certification requirements.

57.     **Numerosity**. While Plaintiff does not know the exact number of members of the Class, Plaintiff believes the class size is numerous given Defendants' substantial nationwide presence.

**Answer**: The allegations contained in Paragraph 57 of the Complaint state a legal conclusion to which no response is required. To the extent a response is required, Hearst

denies the allegations in Paragraph 57 of the Complaint, and specifically denies these actions meet class certification requirements.

58. **Commonality**. Common questions of law and fact exist as to all members of the Class. This is particularly true given the nature of Defendants' unlawful anticompetitive conduct, which was generally applicable to all the members of the Class, thereby making class-wide relief appropriate. Such questions of law and fact common to the Class include, but are not limited to:

(a)   Whether Defendants and their co-conspirators engaged in a combination and conspiracy among themselves to restrict output and fix, raise, maintain or stabilize the prices of local television advertising time;

(b)   The identity of the participants of the alleged conspiracy;

(c)   The duration of the alleged conspiracy;

(d)   The acts carried out by Defendants and their co-conspirators in furtherance of the conspiracy;

(e)   Whether the alleged conspiracy violated Section 1 of the Sherman Act;

(f)   Whether the conduct of Defendants and their co-conspirators as alleged in this Complaint caused injury to the business or property of Plaintiff and the members of the Class;

(g)   The effect of the alleged conspiracy on the cost of local television advertising time during the Class Period;

(h)   Whether the Defendants and their co-conspirators fraudulently concealed the existence of their anticompetitive conduct from Plaintiff and the members of the Class;

(i)   The appropriate injunctive and related equitable relief for Plaintiff and the Class; and

(j)   The appropriate class-wide measure of damages.

**Answer**:  The allegations contained in Paragraph 58 of the Complaint state legal conclusions to which no response is required.  To the extent a response is required, Hearst denies the allegations in Paragraph 58 of the Complaint, and specifically denies these actions meet class certification requirements.

59.    **Typicality**. Plaintiff's claims are typical of the claims of the members of the Class, and Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff and all members of the Class are similarly affected by Defendants' unlawful conduct in that they paid artificially inflated prices for local television advertising time provided by Defendants and/or their co-conspirators.

        **Answer**:  The allegations contained in Paragraph 59 of the Complaint state legal conclusions to which no response is required.  To the extent a response is required, Hearst denies the allegations in Paragraph 59 of the Complaint, and specifically denies these actions meet class certification requirements.

60.    **Adequacy**. Plaintiff's claims arise out of the same common course of conduct giving rise to the claims of the other members of the Class. Plaintiff's interests are coincident with, and not antagonistic to, those of the other members of the Class. Plaintiff is represented by competent counsel who are experienced in the prosecution of antitrust and class action litigation.

        **Answer**:  The allegations contained in Paragraph 60 of the Complaint state legal conclusions to which no response is required.  To the extent a response is required, Hearst denies the allegations in Paragraph 60 of the Complaint, and specifically denies these actions meet class certification requirements.

61.    **Predominance**. The questions of law and fact common to the members of the Class predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

        **Answer**:  The allegations contained in Paragraph 61 of the Complaint state legal conclusions to which no response is required.  To the extent a response is required, Hearst denies the allegations in Paragraph 61 of the Complaint, and specifically denies these actions meet class certification requirements.

62.    **Superiority**. Class action treatment is a superior method for the fair and

efficient adjudication of the controversy, in that, among other things, such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort and expense that numerous individual actions would engender. The benefits of proceeding through the class mechanism, including providing injured persons or entities with a method for obtaining redress for claims that it might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in management of this class action.

**Answer**:  The allegations contained in Paragraph 62 of the Complaint state legal conclusions to which no response is required.  To the extent a response is required, Hearst denies the allegations in Paragraph 62 of the Complaint, and specifically denies these actions meet class certification requirements.

63.    The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

**Answer**:   The allegations contained in Paragraph 63 of the Complaint state a legal conclusion to which no response is required.  To the extent a response is required, Hearst denies the allegations in Paragraph 63 of the Complaint, and specifically denies these actions meet class certification requirements.

**INTERSTATE TRADE AND COMMERCE**

64.    Billions of dollars of transactions in local television advertisements are entered into each year in interstate commerce in the United States and the payments for those transactions flowed in interstate commerce.

**Answer**:   The allegations contained in Paragraph 64 of the Complaint state a legal conclusion to which no response is required.  To the extent a response is required, Hearst lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 64 of the Complaint.

65. Defendants' manipulation of the market for the sale of local television advertising had a direct, substantial, and foreseeable impact on interstate commerce in the United States.

**Answer**:  The allegations contained in Paragraph 65 of the Complaint state a legal conclusion to which no response is required.  To the extent a response is required, Hearst denies the allegations in Paragraph 65 of the Complaint.

66. Defendants intentionally targeted their unlawful conduct to affect commerce, including interstate commerce within the United States, by combining, conspiring, and/or agreeing to fix, maintain, stabilize, and/or artificially inflate prices for local television advertising.

**Answer**:  The allegations contained in Paragraph 66 of the Complaint state a legal conclusion to which no response is required.  To the extent a response is required, Hearst denies the allegations in Paragraph 66 of the Complaint.

67. Defendants' unlawful conduct has a direct and adverse impact on competition in the United States. Absent Defendants' combination, conspiracy, and/or agreement to manipulate the market for the sale of local television advertising, the prices of local television advertising would have been determined by a competitive, efficient market.

**Answer**:  The allegations contained in Paragraph 67 of the Complaint state legal conclusions to which no response is required.  To the extent a response is required, Hearst denies the allegations in Paragraph 67 of the Complaint.

## FRAUDULENT CONCEALMENT

68. Any applicable statute of limitations has been tolled by Defendants' knowing and active concealment of their unlawful conduct, including their collusion to fix, maintain, stabilize, and/or artificially inflate prices for television advertising. The very nature of Defendants' conspiracy was secret and self-concealing. Defendants engaged in market manipulation that could not be detected by Plaintiff and members of the Class.

**Answer**: The allegations contained in Paragraph 68 of the Complaint state legal conclusions to which no response is required. To the extent a response is required, Hearst denies the allegations in Paragraph 68 of the Complaint.

69. Throughout the Class Period, Defendants and their co-conspirators affirmatively and fraudulently concealed their price-fixing conspiracy.

**Answer**: The allegations contained in Paragraph 69 of the Complaint state a legal conclusion to which no response is required. To the extent a response is required, Hearst denies the allegations in Paragraph 69 of the Complaint.

70. Plaintiff and members of the Class did not know of any facts that would have caused a reasonable person to suspect that Defendants and their co-conspirators were colluding to fix, maintain, stabilize, and/or artificially inflate prices for television advertising.

**Answer**: The allegations contained in Paragraph 70 of the Complaint state legal conclusions to which no response is required. To the extent a response is required, Hearst denies that it had co-conspirators or engaged in collusion to fix, maintain, stabilize, and/or artificially inflate prices for television advertising. Hearst lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 70 of the Complaint.

71. Plaintiff and the Class members did not discover, nor could they have discovered through the exercise of reasonable diligence, the existence of the conspiracy alleged herein prior to *The Wall Street Journal*'s disclosure of the DOJ investigation of Defendants and their co-conspirators on July 26, 2018.

**Answer**: The allegations contained in Paragraph 71 of the Complaint state legal conclusions to which no response is required. To the extent a response is required, Hearst

denies that it engaged in a conspiracy. Hearst lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 71 of the Complaint.

72. As alleged herein, Defendants' collusion to fix prices in the market for the sale of local television advertising was material to Plaintiff and Class members at all relevant times. Plaintiff or the Class members could not have discovered the violations until shortly before this litigation was commenced because Defendants and their co-conspirators used, and continue to use, deceptive methods to avoid detection and to affirmatively conceal their violations.

**Answer**: The allegations contained in Paragraph 72 of the Complaint state legal conclusions to which no response is required. To the extent a response is required, Hearst denies the allegations in Paragraph 72 of the Complaint.

73. Plaintiff and Class members reasonably relied on Defendants' knowing, active, and affirmative concealment. As a result of Defendants' fraudulent concealment, all applicable statutes of limitations affecting the Plaintiff's and the Class members' claims have been tolled.

**Answer**: The allegations contained in Paragraph 73 of the Complaint state legal conclusions to which no response is required. To the extent a response is required, Hearst denies the allegations in Paragraph 73 of the Complaint.

### PLAINTIFF AND THE CLASS SUFFERED ANTITRUST INJURY

74. Plaintiff and Class members purchased television advertising time from one or more Defendants or their co-conspirators in the United States.

**Answer**: Hearst denies that Plaintiff purchased advertisement time directly from it, admits that Plaintiff purchased advertisement time directly from a subsidiary of Hearst, and otherwise lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 74 of the Complaint.

75. Sinclair and Tribune are horizontal competitors in the market for the sale of television advertising in the United States. Together, the media companies reach more than 80% of households in the United States.

**Answer**: The allegations in the first sentence of Paragraph 75 of the Complaint states a legal conclusion to which no response is required. To the extent a response is required, Hearst lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 75 of the Complaint. Hearst lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 75 of the Complaint.

76. Rather than compete on price as horizontal competitors would in an unrestrained market, Defendants intended to restrain trade, and actually did restrain trade, through their common scheme to achieve their unlawful purpose and objective of inflating, fixing, stabilizing, and/or maintaining advertising rates.

**Answer**: The allegations contained in Paragraph 76 of the Complaint state a legal conclusion to which no response is required. To the extent a response is required, Hearst denies the allegations in Paragraph 76 of the Complaint.

77. There is no legitimate business justification for, or procompetitive benefits of, Defendants' unreasonable restraint of trade.

**Answer**: The allegations contained in Paragraph 77 of the Complaint state a legal conclusion to which no response is required. To the extent a response is required, Hearst denies the allegations in Paragraph 77 of the Complaint, and specifically denies the allegation that it restrained trade.

78. Defendants' antitrust conspiracy, conspiracy to monopolize, attempted monopolization, and monopolization had the following effects, among others:

(a) Price competition has been restrained or eliminated with respect to local

television advertising;

(b) The prices of local television advertising have been fixed, raised, maintained, or stabilized at artificially inflated levels;

(c) Plaintiff and Class members—purchasers of local television advertising time—have been deprived of the benefits of free and open competition; and

(d) Plaintiff and Class members—purchasers of local television advertising time—paid artificially inflated prices.

**Answer**: The allegations contained in Paragraph 78 of the Complaint state legal conclusions to which no response is required. To the extent a response is required, Hearst denies the allegations in Paragraph 78 of the Complaint.

79. Absent Defendants' and their co-conspirators' collusion, those purchasing television advertising would have transacted at competitive prices and reaped the benefits of competition.

**Answer**: The allegations contained in Paragraph 79 of the Complaint state a legal conclusion to which no response is required. To the extent a response is required, Hearst denies the allegations in Paragraph 79 of the Complaint.

80. The precise amount of the overcharge impacting the prices of local television advertising time paid by Plaintiff and the Class can be measured and quantified using well-accepted models.

**Answer**: The allegations contained in Paragraph 80 of the Complaint state a legal conclusion to which no response is required. To the extent a response is required, Hearst denies the allegations in Paragraph 80 of the Complaint.

81. As a direct, intended, foreseeable, and proximate result of Defendants' unlawful conspiracy and acts in furtherance of their conspiracy, Plaintiff and the members of the Class have sustained injury to their businesses or property, having paid higher prices for local television advertising time than they would have paid in the absence of Defendants' illegal contract, combination, or conspiracy and, as a result, have suffered damages in an amount

presently undetermined. This is an antitrust injury of the type that the antitrust laws were meant to punish and prevent.

**Answer**: The allegations contained in Paragraph 81 of the Complaint state legal conclusions to which no response is required. To the extent a response is required, Hearst denies the allegations in Paragraph 81 of the Complaint, and specifically denies that it engaged in a combination or conspiracy.

**COUNT ONE**
**Violation of Section 1 of the Sherman Act (15 U.S.C. § 1)**
**(Conspiracy in Restraint of Trade)**

82.  Plaintiff repeats the allegations set forth above as if fully set forth herein.

**Answer**: Hearst incorporates and realleges its answers to Paragraphs 1-81 above as if set forth herein.

83.  From at least January 1, 2014, until the effects of their unlawful conduct ceases, Defendants and their co-conspirators entered into and engaged in a contract, combination, or conspiracy with regards to local television advertising in unreasonable restraint of trade in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

**Answer**: Hearst denies the allegations in Paragraph 83 of the Complaint, except to the extent the allegations state legal conclusions that do not require a response.

84.  The contract, combination or conspiracy consisted of an agreement among the Defendants and their co-conspirators to fix, raise, stabilize or maintain at artificially high levels the prices they charged for local television advertising time in the United States.

**Answer**: Hearst denies the allegations in Paragraph 84 of the Complaint, except to the extent the allegations state legal conclusions that do not require a response.

85.  In formulating and effectuating this conspiracy, Defendants and their co-

conspirators did those things that they combined and conspired to do, including:

(a)   participating in meetings and conversations among themselves during which they agreed to charge prices at certain levels, and otherwise to fix, increase, maintain, or stabilize prices of local television advertisements in the United States; and

(b)   participating in meetings and conversations among themselves to implement, adhere, and police the agreements they reached.

**Answer**: Hearst denies the allegations in Paragraph 85 of the Complaint, except to the extent the allegations state legal conclusions that do not require a response.

86.   Defendants and their co-conspirators engaged in the actions described above for the purpose of carrying out their unlawful agreements to fix, maintain, raise, or stabilize prices of local television advertising time.

**Answer**: Hearst denies the allegations in Paragraph 86 of the Complaint, except to the extent the allegations state legal conclusions that do not require a response.

87.   Defendants' conspiracy had the following effects, among others:

(a)   Price competition in the market for local television advertisements has been restrained, suppressed, and/or eliminated;

(b)   Prices for local television advertisement time provided by Defendants and their co-conspirators have been fixed, raised, maintained, and stabilized at artificially high, non-competitive levels throughout the United States; and

(c)   Plaintiff and Class members who purchased local television advertisement time from Defendants and their co-conspirators have been deprived of the benefits of free and open competition.

**Answer**:   The allegations contained in Paragraph 87 of the Complaint state legal conclusions to which no response is required.  To the extent a response is required, Hearst denies the allegations in Paragraph 87 of the Complaint.

88.   Plaintiff and Class members have been injured and will continue to be injured in their business and property by paying more for local television advertising time purchased

from Defendants and their co-conspirators than they would have paid and will pay in the absence of the conspiracy.

        **Answer**:  The allegations contained in Paragraph 88 of the Complaint state a legal conclusion to which no response is required.  To the extent a response is required, Hearst denies the allegations in Paragraph 88 of the Complaint.

       89.    The alleged contract, combination, or conspiracy is a *per se* violation of the federal antitrust laws.

        **Answer**:  The allegations contained in Paragraph 89 of the Complaint state a legal conclusion to which no response is required.  To the extent a response is required, Hearst denies the allegations in Paragraph 89 of the Complaint.

       90.    Plaintiff and Class members are entitled to treble damages and an injunction against Defendants, preventing and restraining the violations alleged herein.

        **Answer**:  The allegations contained in Paragraph 90 of the Complaint state a legal conclusion to which no response is required.  To the extent a response is required, Hearst denies the allegations in Paragraph 90 of the Complaint.

## PRAYER FOR RELIEF

    **WHEREFORE**, Plaintiff and the Class respectfully request the following relief:

    A.    That the Court determine that this action may be maintained as a class action under Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, and direct that reasonable notice of this action, as provided by Rule 23(c)(2) of the Federal Rules of Civil Procedure, be given to each and every member of the Class;

    B.    The Court adjudge and decree that the acts of the Defendants are illegal and unlawful, including the agreement, contract, combination, or conspiracy, and acts done in furtherance thereof by Defendants and their co-conspirators be adjudged to have been a *per se* violation of Section 1 of the Sherman Act, 15 U.S.C. § 1;

C.     The Court permanently enjoin and restrain Defendants, their affiliates, successors, transferees, assignees, and other offices, directors, agents, and employees thereof, and all other persons acting or claiming to act on their behalf, from in any manner continuing, maintaining, or renewing the conduct, contract, conspiracy, or combination allege herein, or from entering into any other contract, conspiracy, or combination having a similar purpose or effect, and from adopting or following any practice, plan, program, or device having a similar purpose or effect;

D.     That Judgment be entered against Defendants, jointly and severally, and in favor of Plaintiff and members of the Class for treble the amount of damages sustained by Plaintiff and the Class as allowed by law, together with costs of the action, including reasonable attorneys' fees, pre- and post-judgment interest at the highest legal rate from and after the date of service of this Complaint to the extent provided by law;

E.     That each of the Defendants, and their respective successors, assigns, parent, subsidiaries, affiliates, and transferees, and their officers, directors, agents, and representatives, and all other persons acting or claiming to act on behalf of Defendants or in concert with them, be permanently enjoined and restrained from, in any manner, directly or indirectly, continuing, maintaining or renewing the combinations, conspiracy, agreement, understanding, or concerted action as alleged herein; and

F.     That the Court award Plaintiff and members of the Class such other and further relief as the case may require and the Court may deem just and proper under the circumstances.

**Answer**:  Plaintiff's Prayer for Relief contains legal conclusions to which no response is required.  To the extent a response is required, Hearst denies that Plaintiff's purported class is certifiable, or that Plaintiff or the members of the purported class suffered injury or damage of any kind, and further denies that Plaintiff or the putative members of the purported class are entitled to relief of any kind, including but not limited to the relief sought in paragraphs (A) through (F) of the demand for relief.

## JURY DEMAND

Plaintiff demands a trial by jury, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, of all issues so triable.

**Answer**:  Plaintiff's Jury Demand does not require a response.  To the extent a response is required, Hearst admits that Plaintiff purports to demand a trial by jury pursuant to Federal Rule of Civil Procedure 38(b).

## AFFIRMATIVE DEFENSES

Without admitting liability as to any of the claims asserted in the Complaint, and without assuming the burden of proof on any claims or defenses, or legal or factual issues that otherwise would rest with Plaintiff, Hearst asserts the following affirmative and other defenses. Hearst's investigation in this matter continues and Hearst reserves the right to supplement or modify any portion of this Answer, including but limited to by asserting additional or other affirmative defenses or claims not yet asserted herein, at any time and consistent with the Federal Rules of Civil Procedure.

### FIRST AFFIRMATIVE DEFENSE

Plaintiff's and the putative class members' claims are barred in whole or in part because the Complaint fails to state a claim upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

Plaintiff's and the putative class members' claims are barred in whole or in part because their injuries, if any, were caused in whole or in part by one or more third parties not under the control of Hearst.

### THIRD AFFIRMATIVE DEFENSE

Plaintiff's and the putative class members' claims are barred in whole or in part because Plaintiff's injuries, if any, were caused in whole or in part by Plaintiff's own culpable conduct.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiff's and the putative class members' claims are barred in whole or in part because the relief sought would result in Plaintiff's unjust enrichment.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiff's and the putative class members' claims are barred in whole or in part because the conduct complained of is permitted by law.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiff's and the putative class members' claims are barred in whole or in part because they lack Article III standing to bring some or all of their claims.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's and the putative class members' claims are barred in whole or in part because they lack standing to bring claims for antitrust violations because, among other reasons, Plaintiff and the putative class members have failed to plead facts showing a direct causal connection between the challenged conduct and their alleged injury and because Plaintiff and the putative class members have not suffered antitrust injury.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's and the putative class members' claims are barred, in whole or in part, because they cannot be maintained as a class action.

## NINTH AFFIRMATIVE DEFENSE

Plaintiff and the putative class members have failed to allege fraudulent concealment with the particularity required by Federal Rule of Civil Procedure 9(b).

## TENTH AFFIRMATIVE DEFENSE

Plaintiff's and the putative class members' claims are barred, in whole or in part, by the statutes of limitation applicable to their claims.

## ELEVENTH AFFIRMATIVE DEFENSE

Plaintiff's and the putative class members' claims are barred, in whole or in part, by the doctrine of unclean hands, waiver, laches, or estoppel.

## TWELFTH AFFIRMATIVE DEFENSE

Plaintiff's and the putative class members' claims are barred, in whole or in part, by the doctrines of *in pari delicto*, involvement, participation, equal involvement, or complete involvement.

## THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiff's and the putative class members' claims to certain remedies are barred, in whole or in part, to the extent that they have waived, under any applicable contract or otherwise, their rights to those remedies, including but not limited to treble damages and attorneys' fees.

## FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiff's and the putative class members' claims are barred, in whole or in part, by the doctrines of accord and satisfaction, release, or settlement.

## FIFTEENTH AFFIRMATIVE DEFENSE

Plaintiff's and the putative class members' claims are barred, in whole or in part, by reason of their ratification of, or acquiescence, agreement, or consent to Hearst's conduct.

## SIXTEENTH AFFIRMATIVE DEFENSE

Plaintiff's and the putative class members' claims are barred to the extent that they have agreed to arbitration or agreed to a different forum for the resolution of their claims.

## SEVENTEENTH AFFIRMATIVE DEFENSE

Plaintiff's and the putative class members' claims are barred, in whole or in part, because they have not suffered an actual injury or damages due to any act or omission of Hearst.

## EIGHTEENTH AFFIRMATIVE DEFENSE

Plaintiff's and the putative class members' claims are barred, in whole or in part, because they have not suffered an injury or damages legally or proximately caused by any act or omission of Hearst.

## NINETEENTH AFFIRMATIVE DEFENSE

Plaintiff's and the putative class members' claims are barred because the conduct they challenge is not *per se* illegal and they fail to allege, and cannot prove, any cognizable geographic and/or product market for the purpose of asserting a claim against Hearst.

### TWENTIETH AFFIRMATIVE DEFENSE

Plaintiff's and the putative class members' claims are barred, in whole or in part, because there has been no injury to competition either in fact or as alleged in the Complaint.

### TWENTY-FIRST AFFIRMATIVE DEFENSE

Plaintiff's and the putative class members' claims are barred, in whole or in part, because Hearst's actions did not lessen competition in the relevant market.

### TWENTY-SECOND AFFIRMATIVE DEFENSE

Plaintiff's and the putative class members' claims are barred, in whole or in part, because the conduct complained of was lawful, justified, constitutes bona fide business competition, is procompetitive, and was carried out in furtherance of legitimate business interests.

### TWENTY-THIRD AFFIRMATIVE DEFENSE

Plaintiff's and the putative class members' claims are barred, in whole or in part, because the pro-competitive benefits of the conduct alleged by Plaintiff outweighs any alleged anti-competitive effects.

### TWENTY-FOURTH AFFIRMATIVE DEFENSE

At all times relevant, Hearst acted in good faith and without knowledge of any wrongful acts or intents.

### TWENTY-FIFTH AFFIRMATIVE DEFENSE

Plaintiff's and the putative class members' claims are barred because any damages suffered by Plaintiff and the putative class members are solely and proximately caused by the operation of external economic factors and/or forces in the marketplace over which Hearst had no control, and not by any act or omission attributable to Hearst.

### TWENTY-SIXTH AFFIRMATIVE DEFENSE

Plaintiff and the putative class members' claimed injuries or damages, if any, were

caused solely and proximately by the acts and omissions of other persons or entities unaffiliated with Hearst.

### TWENTY-SEVENTH AFFIRMATIVE DEFENSE

To the extent that any actionable conduct occurred, Plaintiff's and the putative class members' claims are barred because all such conduct would have been committed by individuals acting ultra vires.

### TWENTY-EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's and the putative class members' claims are barred, in whole or in part, because they failed to use reasonable means to avoid any damage and also failed to take appropriate and necessary steps to mitigate damages.

### TWENTY-NINTH AFFIRMATIVE DEFENSE

Plaintiff's and the putative class members' claims should be dismissed to the extent that they are barred, in whole or in part, because any claimed injury or damage has been offset by benefits they received.

### THIRTIETH AFFIRMATIVE DEFENSE

Plaintiff's and the putative class members' claims are barred, in whole or in part, to the extent that they seek damages that are duplicative of damages sought in other actions.

### THIRTY-FIRST AFFIRMATIVE DEFENSE

Plaintiff's and the putative class members' claims for damages are barred, in whole or in part, to the extent they have not suffered damages and their alleged damages are speculative, cannot be ascertained with reasonably certainty, or are incapable of proof.

### THIRTY-SECOND AFFIRMATIVE DEFENSE

Plaintiff's and the putative class members' claims are barred, in whole or in part, to the extent that those claims and/or the relief requested would violate the First Amendment.

## THIRTY-THIRD AFFIRMATIVE DEFENSE

Without admitting the existence of any contract, combination, or conspiracy in restraint of trade, Hearst avers that it is entitled to set off any amounts paid to Plaintiff and the putative class members by any other defendants who have settled, or do settle, any claims in this action.

## THIRTY-FOURTH AFFIRMATIVE DEFENSE

To the extent that Plaintiff and the putative class members seek to collect treble damages, attorneys' fees and expenses, and other monetary relief from Hearst, they seek a recovery that is so grossly excessive and inequitable that it would violate the Due Process Clause of the Fifth and Fourteenth Amendments of the United States Constitution.

## THIRTY-FIFTH AFFIRMATIVE DEFENSE

Hearst has engaged in no behavior that it knew to be, or could reasonably foresee would ever be found to be, improper or forbidden under the antitrust laws, and thus neither actual nor treble damages may be awarded against it.

## THIRTY-SIXTH AFFIRMATIVE DEFENSE

Plaintiff's and the putative class members' claims for injunctive or other equitable relief are barred, in whole or in part, because they have available an adequate remedy at law.

## THIRTY-SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's and the putative class members' claims for injunctive relief are barred, in whole or in part, insofar as they seek to enjoin alleged events that have already transpired without the requisite showing of threatened future harm or continuing harm.

## THIRTY-EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's and the putative class members' claims are barred, in whole or in part, because the claims are governed by the rule of reason, and they have not alleged and cannot prove the elements of a rule of reason claim.

## THIRTY-NINTH AFFIRMATIVE DEFENSE

Plaintiff's and the putative class members' claims should be dismissed to the extent that they are barred, in whole or in part, for failure to join indispensable parties.

## FORTIETH AFFIRMATIVE DEFENSE

Plaintiff's and the putative class members' claims are improperly joined, including within the meaning of Federal Rule of Civil Procedure 20, because they did not arise out of the same transaction, occurrence, or series of transactions or occurrences and/or do not involve questions of law or fact common to all defendants.

## FORTY-FIRST AFFIRMATIVE DEFENSE

This Court lacks subject matter jurisdiction, pursuant to the Foreign Trade Antitrust Improvements Act, 15 U.S.C. § 6a, to the extent that Plaintiff's and the putative class members' claims encompass conduct involving foreign commerce.

## FORTY-SECOND AFFIRMATIVE DEFENSE

Hearst incorporates by reference and asserts to the extent applicable all other affirmative defenses set forth in the Answers of each of the other defendants.

## FORTY-THIRD AFFIRMATIVE DEFENSE

Hearst hereby gives notice that it intends to rely upon any other defense that may become available or appear during the discovery process in this case and hereby reserves its right to amend its Answer to assert any such defenses.

## FORTY-FOURTH AFFIRMATIVE DEFENSE

Hearst hereby reserves the right to assert other defenses as this action proceeds up to and including the time of trial and any appeal thereof.

WHEREFORE, Defendant Hearst demands judgment against Plaintiff as follows:

i.    dismissing Plaintiff's Complaint with prejudice and denying each and every request for relief set forth therein;

ii.    awarding Hearst the costs and disbursements of this action; and

iii.    granting Hearst such other and further relief as the Court may deem just and equitable, including attorneys' fees and costs.

Dated: September 5, 2018                         Respectfully submitted,


                                                 /s/ Julie A. North
                                         _____
                                         Evan R. Chesler (PHV admission
                                         forthcoming)
                                         Julie A. North (PHV admission pending)

                                         Cravath, Swaine & Moore LLP
                                             Worldwide Plaza
                                                 825 Eighth Avenue
                                                     New York, NY 10019
                                                         Telephone:  (212) 474-1000
                                                         Facsimile:  (212) 474-3700
                                                         echesler@cravath.com
                                                         jnorth@cravath.com

                                         *Counsel for Defendant Hearst Television Inc.
                                         (improperly sued as "Hearst
                                         Communications")*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on September 5, 2018.

/s/ Julie A. North